UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL JUDAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-00831-TWP-MPB |
| | ) |
| FCA US LLC, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Cross-Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Michael Juday ("Juday") and Defendant FCA US LLC ("FCA") (Filing No. 33; Filing No. 36). After FCA suspended him from work for thirty days following his leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA"), Juday initiated this action asserting claims for FMLA interference and retaliation. On March 11, 2020, FCA filed a Motion for Summary Judgment on Juday's two FMLA claims, and Juday responded filing a Cross-Motion for Summary Judgment on March 24, 2020. For the following reasons, FCA's Motion is **granted** and Juday's Motion is **denied**.

### I. BACKGROUND

FCA is an automotive manufacturer with multiple manufacturing facilities in Indiana (Filing No. 35-3 at 3). Juday began working for FCA on February 2, 1998. Throughout his employment, he has worked in the skilled trades and, presently, works as a machine repairman and coordinator (Filing No. 1 at 2; Filing No. 8 at 2). Juday has, at various times, worked at FCA's Indiana Transmission Plant 1, Indiana Transmission Plant 2, and Kokomo Transmission Plant, all located in Kokomo, Indiana. He has also worked at FCA's Tipton, Indiana plant. During 2017,

Juday was based out of the Kokomo Transmission Plant, but he occasionally had assignments and projects in other plants (Filing No. 35-3 at 3; Filing No. 35-1 at 4).

During 2017, Juday was working as a machine repairman in the professional maintenance department at the Kokomo Transmission Plant. He was supervised by Doug Hartman, Casey Howard, and Blake Dillinger. He applied for, and received, a position as the coordinator of machine repair for the Kokomo Transmission Plant effective January 1, 2018. In 2017, Juday's work hours were from 5:48 a.m. to 4:18 p.m., Monday through Thursday. Juday's wife, Becky Juday, also works for FCA at the Kokomo Transmission Plant, and during 2017, she worked Monday through Thursday, but her shift started at 6:00 a.m. In their employment, Juday and Becky Juday are represented by the United Auto Workers – Local 685 (the "Union") (Filing No. 35-1 at 4, 13; Filing No. 35-3 at 3; Filing No. 36-3 at 26–27).

FCA has a "Standards of Conduct" policy for all of its hourly employees, including Juday, and the standards note that all employees "share a responsibility to behave with integrity." (Filing No. 35-3 at 4, 10). The standards provide that certain behaviors are destructive to work performance and culture, and "those behaviors cannot be tolerated." *Id.* at 10. The standards specifically state that "[p]roviding false and/or misleading information to [FCA]" is one destructive behavior that would not be tolerated by FCA. *Id.*

FCA also maintains an FMLA policy which provides that eligible employees have up to twelve weeks of unpaid leave during a calendar year to, among other things, "care for the employee's spouse, child or parent with a serious health condition," or "because of an employee's own serious health condition." (Filing No. 35-4 at 7.) The policy ensures that, "upon return from an FMLA leave, the employee will be restored to his/her former position or equivalent position with equivalent pay, benefits, and other terms and conditions of employment." *Id.* at 12. The

FMLA policy explains that "[p]roviding any false or misleading information relative to a requested or approved FMLA leave will be cause for disciplinary action, up to and including discharge." *Id.* at 7.

Juday understood that FMLA leave was permitted only for certain purposes. He understood that he could take FMLA leave for his own serious health conditions but that he could not take leave for "any" purpose and just call it "FMLA leave." He also understood he would be entitled to FMLA leave only to the extent a certification was provided under FCA's policy; otherwise, the leave would not be protected under the FMLA. Juday assumed that providing false or misleading information relative to a requested or approved FMLA leave, even if he did so only once, would be cause for disciplinary action. Juday, through his health care provider, always has provided the recertification documentation when it was requested (Filing No. 35-1 at 6; Filing No. 36-3 at 73).

During 2017, as well as presently, FCA utilized the services of a third party leave administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), to administer their employees' FMLA leave requests. All leave requests are submitted to Sedgwick, which will either approve or deny the request; FCA does not review leave requests or communicate leave decisions to its employees (Filing No. 35-4 at 2, 4; Filing No. 35-1 at 6).

While working at FCA, Juday from time to time has requested and has been approved to take intermittent leave under the FMLA when his health conditions of back and neck pain, or anxiety and depression would flare up.[1] As long as Juday provided a certification, Sedgwick approved his FMLA leave. Even when Juday's absences exceeded the frequency or duration of

---

[1] Separately, Becky Juday, who suffers from Irritable Bowel Syndrome, also utilized intermittent FMLA leave for her serious health condition throughout the year 2017. (Filing No. 37 at 1).

his approved leave, FCA did not discipline him; rather, Sedgwick requested additional certification information. When Juday returned to work, he always returned to the same position with the same supervisor at the same rate of pay. Juday has continued to use FMLA leave after 2017.

In 2018, FCA suspended Juday from his employment for a one-month period because FCA believed that Juday had provided false or misleading information about his FMLA leave to FCA. Juday served his suspension from February 6, 2018 to March 7, 2018 ([Filing No. 1 at 2](); [Filing No. 8 at 3](); [Filing No. 35-3 at 5](); [Filing No. 36-3 at 45](), 70–72, 78–80, 84–85; [Filing No. 35-2 at 4]()–5, 8; [Filing No. 35-1 at 24]()).

Juday's one-month employment suspension in 2018 occurred after FCA received a notification in December 2017 about Juday's FMLA leave. The notification was sent from Ashley Lange, absence management team lead at Sedgwick, to Anne Stebbins ("Stebbins"), FCA's manager for hourly FMLA administration. Sedgwick informed FCA that Juday and his wife had both taken FMLA leave on the same day several times throughout 2017 ([Filing No. 35-4 at 2](), 4, 21–22).

Stebbins was concerned that the pattern identified by Sedgwick—Juday and his wife using FMLA leave on the same day many times during the year—could indicate abuse of FCA's FMLA leave benefits. She decided to investigate and compiled an attendance history spreadsheet that combined Juday's and his wife's lost time. Stebbins identified common dates of absence as well as common dates and times of absence. Stebbins' investigation revealed that the Judays had twenty-one common dates of absence and twenty-seven additional common dates and times of absence in 2017. Juday took FMLA leave on twenty-six of the twenty-seven common dates and times of absence. Stebbins also took note of Juday's shift start time of 5:48 a.m., and Becky Juday's shift start time of 6:00 a.m. After compiling this information, Stebbins provided the information

to the labor relations department at the Kokomo Transmission Plant where Juday and his wife worked (Filing No. 35-4 at 4).

Using the information provided by Stebbins, Joe Boyer ("Boyer"), FCA's Labor Relations Representative, interviewed Juday and Becky Juday separately. On January 3, 2018, Boyer interviewed Juday with his Union representative present. During the interview, Juday stated that his wife's health condition can cause him stress and trigger his anxiety. Juday explained that he and his wife have random and unpredictable flare-ups. Juday reported to Boyer that his FMLA flare-ups occurred because of his wife's flare-ups about 20–30% of the time. Juday also responded that he could not explain how he and his wife took FMLA leave for the same periods of time on the same days more than twenty-five times in 2017, and he was not aware it had occurred that frequently. (Filing No. 35-3 at 4–5, 23–24.)

Juday and Becky Juday were interviewed separately by the labor relations department. Boyer, the Labor Relations Representative, interviewed Juday with his Union representative present. Stebbins reviewed the notes from Boyer's interviews and compared the information with the attendance records that she had compiled, which were a cross-reference to show overlapping absences of Juday and his wife. Stebbins noted that Juday reported his FMLA flare-ups occurred randomly and unpredictably. While Juday told Boyer his FMLA flare-ups occurred because of his wife's flare-ups only 20–30% of the time, almost half of his 2017 FMLA tardies were on the same dates as his wife's absence/tardy and more than half of his 2017 FMLA absences were on the same dates as his wife's absence/tardy. After reviewing all of the information, Stebbins did not believe that Juday provided a reason for why he took FMLA leave on so many of the same days as his wife in 2017. Stebbins conferred with labor relations representatives and counsel, before

concluding that Juday had provided false or misleading information to FCA about his 2017 FMLA leave (Filing No. 35-4 at 5).

On February 6, 2018, Boyer issued a 30-day disciplinary layoff Juday. Becky Juday also received a disciplinary layoff. Juday was informed that he was being disciplined for violating Standard of Conduct #1: "[p]roviding false and/or misleading information to [FCA]." On that same day, February 6, 2018, the Union filed a grievance on Juday's behalf to contest his 30-day suspension (Filing No. 35-3 at 5, 27, 29; Filing No. 35-1 at 11). Following the suspension, Juday returned to the same position with the same supervisor at the same rate of pay. Juday began using FMLA leave around 2010 or 2011, and he has continued to use FMLA leave after 2017 (Filing No. 35-1 at 19–20, 24; Filing No. 35-2 at 11–21).

On February 26, 2019, Juday filed a Complaint in this Court to bring claims against FCA for FLMA interference and retaliation (Filing No. 1). After answering the Complaint, FCA filed its Motion for Summary Judgment on the two FMLA claims, and Juday filed his Cross-Motion. (Filing No. 33; Filing No. 36).

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and

draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the court's] review of the

record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

The FMLA prohibits employers from retaliating against or interfering with an employee's use of or attempt to exercise his right to FMLA leave. *See Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010); *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). An FMLA retaliation claim requires proof of discriminatory or retaliatory intent whereas an FMLA interference claim requires proof that the employer denied an employee's benefits under the FMLA. *Goelzer*, 604 F.3d at 995; *see also Shaffer v. AMA*, 662 F.3d 439, 443 (7th Cir. 2011). FCA argues that the evidence shows neither of Juday's FMLA claims is viable and, furthermore, Juday's Cross-Motion for Summary Judgment was untimely filed and should be stricken.[2] The Court will first address the timeliness of the Cross-Motion and then turn to the two FMLA claims.

**A.   Timeliness of Juday's Cross-Motion for Summary Judgment**

FCA first asks the Court to strike Juday's Cross-Motion for Summary Judgment because it was filed late. FCA argues that Juday took the position that summary judgment motions were not appropriate for this case, and he never indicated that he was going to file such a motion. The case Management Plan, (Filing No. 13), directed that dispositive motions must be filed by February 26, 2020, and then upon FCA's motion, FCA's deadline was extended to March 11, 2020. Juday waited until March 6, 2020, to inform FCA that he intended to file a dispositive motion. Juday filed his

---

[2] In its opening brief, FCA initially argued that Juday's FMLA claims were barred by a "statute of limitations" six-month window for bringing claims, as agreed to in Juday's employment contract. However, after Juday pointed out the fallacy of this argument and raised the case of *McKinley v. Rapid Glob. Bus. Sols., Inc.*, 2017 U.S. Dist. LEXIS 116780 (S.D. Ind. July 26, 2017), FCA acknowledged in its reply brief that it had omitted that case from its analysis and withdrew the argument (Filing No. 41 at 2 n.1). Therefore, the Court will not consider or address the argument.

Cross-Motion with his response brief on March 24, 2020, which FCA argues is untimely and should be stricken.

The Court notes that no previous Court orders in this case have prohibited the filing of cross-motions for summary judgment. Summary judgment motions practice provides for cross-motions, and when utilized, cross-motions often are filed at the time of the response brief. In fact, this Court's "Courtroom Procedures and Trial Practice" note the preference for cross-motions for summary judgment to be filed with the response brief to the initial summary judgment motion ([Filing No. 28 at 4](Filing No. 28 at 4)). Juday's response brief was timely filed, and he filed his Cross-Motion at the same time as his response brief, so the Court **denies** FCA's request to strike Juday's Cross-Motion for Summary Judgment.

**B.     FMLA Interference Claim**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [FMLA]." 29 U.S.C. § 2615(a)(1). To support an FMLA interference claim, a plaintiff must establish, "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). "An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim requires only proof that the employer denied the employee his or her entitlements under the Act." *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012) (internal citation and quotation marks omitted).

FCA argues that Juday was not denied any FMLA benefits, so Juday cannot establish the fifth element to support his FMLA interference claim. It is undisputed Juday was granted FMLA

leave each time he requested it, and he was restored to his same job with the same pay each time he returned from FMLA leave. Even after Juday returned from his 30-day suspension, he was restored to his same job under the same supervisor and with the same pay. Furthermore, Juday continues to request and receive FMLA leave. FCA asserts that a plaintiff who is allowed to exercise his full FMLA rights each time he requests them cannot demonstrate interference as a matter of law. Thus, FCA argues, Juday's FMLA interference claim must be dismissed because FMLA benefits have not been denied.

In response, Juday contends that he is entitled to summary judgment on his FMLA interference claim because the first four elements are demonstrated by the undisputed fact that he has taken FMLA leave in the past. As to the fifth element, Juday argues that FMLA interference also encompasses "us[ing] the taking of FMLA leave as a negative factor in employment actions" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220 (b), (c). Juday used his FMLA leave in accordance with the approval of FCA, and as certified by his health care provider, when he experienced random and unpredictable flare-ups. Juday notes that FCA approved his FMLA requests when it received certifications. Juday argues that FCA's investigation of his FMLA leave and the FMLA leave of his wife did not reveal false or misleading information provided by Juday. Therefore, Juday argues, FCA could not have had an honest suspicion that Juday abused his FMLA leave. And FCA used Juday's taking of FMLA leave as a negative factor in suspending him from employment for thirty days. This, Juday asserts, supports an FMLA interference claim, and he should be awarded summary judgment.

FCA replies that an interference claim cannot survive when a plaintiff is granted FMLA leave shortly after the occurrence of the adverse employment action at issue. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015) (FMLA leave was provided just days after

demotion, so plaintiff could not show his demotion interfered with his use of his FMLA rights). FCA argues that Juday continues to request and receive FMLA leave even after his 30-day suspension, so an interference claim is not viable. After FCA received notification from its third party leave administrator that Juday and his wife Becky Juday had taken a substantial number of FMLA absences on the same days in 2017, they were concerned that the Judays may be taking absences on the same dates for non-FMLA qualifying reasons. FCA investigated and concluded that Juday made false or misleading statements about his FMLA leave. Therefore, FCA had an honest suspicion that Juday had abused his FMLA rights, thereby defeating any FMLA interference claim. Concerning Juday's argument about 29 C.F.R. § 825.220, FCA explains that it issued the 30-day suspension to Juday not because he took FMLA leave but rather because FCA honestly believed he had abused his FMLA leave.

The Court concludes that summary judgment in favor of FCA on the FMLA interference claim is appropriate. Juday asserts that FCA used his taking of FMLA leave as a negative factor when it suspended him for thirty days; however, the undisputed designated evidence indicates that FCA suspended Juday because it believed he abused his FMLA leave by using FMLA leave for non-FMLA purposes, thereby providing false or misleading information to FCA. FCA did not use Juday's simple taking of FMLA leave as a negative factor when it suspended him.

The undisputed evidence shows that FCA suspected the Judays were abusing their FMLA leave by using it for non-FMLA reasons based on the report from Sedgwick. FCA conducted an investigation by reviewing their attendance records and interviewing the Judays. The records indicated that the Judays had twenty-one common dates of absence and twenty-seven additional common dates and times of absence in 2017, and Juday took FMLA leave on twenty-six of the twenty-seven common dates and times of absence. In his interview, Juday said that his flare-ups

11

occurred due to his wife's flare-ups 20–30% of the time, but the records showed that almost half of his 2017 FMLA tardies were on the same dates as his wife's absence/tardy, and more than half of his 2017 FMLA absences were on the same dates as his wife's absence/tardy. Juday could not explain in his interview why he and his wife took FMLA leave for the same periods of time on the same days more than twenty-five times in 2017. All of this led to FCA's reasonable and honest suspicion that Juday was providing false or misleading information about his use of FMLA leave in 2017.

An employer only needs to show that it had an "honest suspicion" that the employee was misusing his FMLA leave to prove that it did not unlawfully interfere with the employee's FMLA rights. *Scruggs*, 688 F.3d at 826. When an employer articulates its reason for taking an adverse action, the employees has the burden

> [t]o successfully challenge the honesty of the company's reasons… she [the employee] must specifically rebut those reasons. But an opportunity for rebuttal is not an invitation to criticize the employer's evaluation process or simply to question its conclusion about the quality of an employee's performance. Rather, rebuttal must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination.

*Kariotis v. Navistar Int'l Transp. Co.*, 131 F.3d 672, 677 (7th Cir. 1997). FCA has demonstrated its honest suspicion by the undisputed designated evidence. Juday's personal belief that he did not give false or misleading information to FCA and that FCA could not have had an honest suspicion of FMLA abuse after its investigation is not evidence that FCA did not actually have an honest suspicion that Juday abused his FMLA rights. For these reasons, Juday's FMLA interference claim fails, and summary judgment in favor of FCA on this claim is appropriate.

### C.     **FMLA Retaliation Claim**

"The FMLA provides that it is unlawful for an employer to discharge or in any manner discriminate against any employee for opposing any practice the FMLA makes unlawful. The

difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent." *Goelzer*, 604 F.3d at 995 (internal citations and quotation marks omitted). To support an FMLA retaliation claim, "a plaintiff must present evidence that her employer took a materially adverse action against her because of her protected activity." *Id.*

FCA argues there is nothing in the evidence that supports a finding of retaliatory or discriminatory intent on the part of FCA and Juday cannot establish a causal connection between his exercise of FMLA leave and his employment discipline. FCA asserts that its honest suspicion Juday abused his FMLA leave breaks any causal connection between Juday's FMLA leave and his employment discipline.

FCA points out that it never denied Juday FMLA leave when he provided the proper certification. He was properly reinstated whenever he took leave. The only time he suffered an adverse employment action was after FCA developed an honest suspicion that Juday abused his FMLA leave. This honest suspicion of FMLA abuse, not Juday's use of FMLA leave, is what led to Juday's discipline. Additionally, FCA continued to grant Juday FMLA leave even after his discipline, thus, even if it was somehow mistaken in its understanding of what occurred, such an error or mistake does not change the outcome. It is well-settled that a retaliation claim does not give an employee the opportunity to "sit as a 'super personnel department' that reexamines an entity's business decisions." *Bratcher v. Subaru of Ind. Auto. Inc.*, 458 F. Supp. 2d 753, 762 (S.D. Ind. 2006). FCA also argues that Juday has no evidence of similarly-situated employees who did not exercise FMLA rights being treated more favorably. Moreover, even if Juday could establish a *prima facie* case of retaliation, FCA relied on a legitimate, non-discriminatory reason for disciplining Juday—an honest suspicion of Juday's FMLA abuse. And Juday has no evidence that this reason for discipline was a pretext for retaliation. His own speculation is insufficient.

Juday responds that there is no question that he engaged in protected activity by seeking, requesting, and taking FMLA leave. He further asserts that there is no dispute that FCA took adverse employment action against him when it suspended his employment for thirty days. Juday argues that the evidence shows there is a causal connection between the two. He asserts that FCA's investigation could not have given rise to an honest suspicion that he abused his FMLA leave, and he did not, in fact, provide any false or misleading statements to FCA. Juday argues that FCA stated he was suspended for his use of FMLA leave. Juday also argues that FCA has not identified any specific false or misleading statements Juday made to FCA, so FCA has been ambiguous in its reasoning, thereby showing an inference of retaliation. Juday asserts that FCA has provided inconsistent reasons for its discipline of Juday—FMLA abuse and providing false or misleading statements to FCA—and these inconsistent reasons show pretext on the part of FCA.

In the previous section deciding the FMLA interference claim, the Court already discussed the issues and arguments concerning FCA's honest suspicion that Juday abused his FMLA rights. The Court's analysis and conclusions apply equally to the FMLA retaliation claim and are incorporated herein. The evidence supports FCA's reasonable and honest suspicion that Juday abused his FMLA rights. Contrary to Juday's allegation, the evidence indicates FCA stated Juday was suspended for FMLA abuse, not for FMLA use. Additionally, concerning Juday's argument that FCA was ambiguous or inconsistent in its reasoning for disciplining him, the evidence indicates otherwise. Juday was informed that he was being disciplined for making false or misleading statements to FCA, and this specifically occurred when he took leave for FMLA reasons, but then FCA concluded that he had taken the leave for non-FMLA reasons. Thus, the false or misleading statements were Juday's requests to use FMLA leave in 2017 when FCA did not believe he was using every day of such leave for an FMLA-qualifying reason.

The evidence does not support a discriminatory or retaliatory intent on the part of FCA. Juday's characterization of the evidence and the allegedly ambiguous or inconsistent reasons do not show pretext by FCA. Furthermore, the evidence does not show a causal connection between Juday's use of FMLA leave and his suspension. Juday was always granted FMLA leave when requested and certified; he was always reinstated to his prior job with the same pay; he was suspended for thirty days after FCA suspected he abused his FMLA rights; he again was reinstated to his prior job with the same pay after the suspension; and he continues to request and receive FMLA leave since his suspension. The evidence does not support an FMLA retaliation claim, so the Court grants summary judgment in favor of FCA on this claim.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** FCA's Motion for Summary Judgment (Filing No. 33) and **DENIES** Juday's Cross-Motion for Summary Judgment (Filing No. 36). Juday's FMLA claims are dismissed, and Final Judgment will issue under separate order.

**SO ORDERED.**

Date: 2/3/2021

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bryan K. Bullock
BIESECKER DUTKANYCH & MACER LLC
bbullock@bdlegal.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Ryan William Sullivan
BIESECKER DUTKANYCH & MACER LLC
rsullivan@bdlegal.com

Tiaundra Marie Foster
OGLETREE DEAKINS NASH SMOAK
& STEWART, P.C.
tiaundra.foster@ogletree.com

Bonnie L. Martin
OGLETREE DEAKINS NASH SMOAK
& STEWART, P.C.
bonnie.martin@ogletree.com